Your Honor, the second case of the morning called 2-12-1391, people of the State of Illinois v. Billy J. Cox. On behalf of the Avalon, Mr. Matthew J. Heideck, on behalf of the Avaline, Ms. Mary Beth Horton. Good morning, counsel. Good morning. Mr. Heideck. Good morning. Good morning. Approximately one year ago, November 30, 2012, Judge Condon, on his last day as a sitting judge and his last act as a judge, dismissed Billy Cox's post-conviction petition in the second stage. And obviously I'm not going to rehash matters that were fleshed out in the briefs, but it's important to note that Judge Condon's decision essentially pigeonholed all of Mr. Cox's arguments and dismissed them for one of three reasons. Either Judge Condon ruled it was a tactical decision. The issues raised by Mr. Cox were tactical decisions that a trial attorney was permitted to make and therefore couldn't be brought up in a post-conviction petition. They were waived. The second argument was they were waived because it couldn't have been brought up in an appeal. Or third, Judge Condon ruled that anything Mr. Cox had raised was a credibility determination to be made by the jury in that case. There is no argument contained in our brief that highlights the incorrectness of Judge Condon's ruling like the second argument we raised regarding a lesser-included jury destruction. And there, for an example, we bring up the fact that Mr. Cox, or that reckless conduct, can be a lesser-included attempt murder. And as I'm sure the record shows that there were two- The defense? I wouldn't say the entire theory. I'd say primarily the trial theory was. How would that be consistent then with a reckless? I'm not saying necessarily it would be consistent. It would be potentially an alternative theory. But the issue I have, and the issue that I think is important, is that the decision as to whether or not at any point the lesser-included is going to be sought is a decision made by Mr. Cox. It's not made by- But was that theory, that alternative theory, raised at the trial? Through the presentation evidence, not by the defense. No. No, it wasn't. So how do you get a lesser-included if that was not the theory at trial? I'm sure now you look back in retrospect and you say, oh, that could have been an alternative theory. But if it wasn't an alternative theory at trial, how can you argue now that the incorrect jury instructions were given at the trial? Well, for two reasons. Number one, I think the state's presentation of the evidence could lead to that theory. Did Mr. Gumberson argue it in the trial court? No, he did not. The only way he would have brought that up was in closing argument. He didn't do that. The same presentation of the state's evidence that the jury relied upon for their attempted murder or verdict on the carbon monoxide poisoning could have also led to the reckless conduct there because there was no direct evidence with respect to mens rea or intent, if you recall. It was all inferred with respect to carbon monoxide. And the same inference that could have led to the attempted murder, the mens rea being knowingly, could have also gone to reckless. Now, Attorney Gumberson didn't argue that. And part of the problem that I have in reviewing the file and talking to Mr. Cox is if the decision as to whether or not you're going to ask for a lesser-included is to be made by the defendant, that's something the attorney should talk to the defendant about and, at the least, bring up in closing argument. And here that wasn't done. Right, but I think our point is that even if it had been done, where can you point to that that instruction would have been allowed? As I recall... Maybe I'm putting the cart before the horse here, but... No, no. And this is going to come up because obviously it isn't off record.  However, the state's presentation of evidence, my point being a moment ago, there was no direct evidence with respect to if you want to buy their, or if you want to agree with their presentation of the evidence wholesale. There was no direct evidence that his mens rea was intent. It was inferred. I believe Mrs. Cox talks about seeing him at one point carrying her through the hallway, remembers being hit in the bed. I don't believe there was a lot of direct testimony with respect to her seeing him in the house other than her at one point saying he came in and said he was going to call the ambulance. If you believe B.J. Cox and the jury did turn down the two automobiles in the garage, for what purpose he turned those automobiles on, whether it was with the intent to kill her, whether it was without really any thought or without any regard for what was going to happen, is something that's inferred by the jury. There wasn't somebody who came in and said B.J. said this or B.J. intended to do this. It was all an inference. So that same evidence could give rise to a lesser-included jury instruction. And the problem I'm stuck with and the problem I have obviously is that it wasn't argued by trial counsel that way. Well, perhaps it wasn't argued by trial counsel because it was a tactical decision. Correct? Perhaps. But if the defendants had the choice to make those five decisions throughout his criminal case, being things like is he going to testify, is he going to waive his right to a jury trial, will he appeal, so on and so forth, the seeking a lesser-included instruction is one of those decisions. If in essence the law is that I guess there is no right or wrong remedy is my point. In seeking an alternative theory or a lesser-included instruction, the attorney should talk to the client about it unless his theory of the case is not that. Isn't it not infrequent for a defense attorney to give it an all or nothing as far as instructions are concerned? I can tell you from my personal experience, especially in a case of this magnitude, you know, I did a murder trial in August, and it was the entire decision on the instructions was done in lockstep with the defendant every step of the way. And at the end, we may not have been left with the closing argument we wanted, but we were left with the closing argument that dealt with the instructions that the defendant wanted us to seek. If this is going to be a right, the decision to seek a lesser-included is going to be a right for a defendant, yes, it is a matter of strategy and trial strategy, but on the other hand, if you're going to say that defense counsel's trial strategy can trump the defendant's right to seek a lesser-included, it's not really a right for the defendant that the defendant has. Go ahead. If, let's assume then for a minute that there's error here, how was the defendant prejudiced? I mean, we've got to have both of these problems. Sure. If we wanted to make the argument that the defendant was prejudiced, I look back to the file is, you know, I know it's difficult to sort through, but when you look at the trial transcripts, the jury did not adopt wholeheartedly the state's theory of the case. The jury found the defendant not guilty on the first count of attempt murder, which was dealing with a bludgeon. You have a jury that this wasn't a clear-cut case, quite frankly. You have circumstantial evidence with respect to a lot of things. How the defendant was prejudiced was that I think very well the jury could have found the defendant not guilty of the attempt murder, guilty on reckless conduct, or perhaps some other lesser-included. Would they have done so? Quite honestly, I think that's more of a third-stage determination. We never got to here. Judge Condon ruled ultimately there wasn't even a substantial showing of a constitutional violation. So I think the prejudice was very well the fact that the jury could have found him guilty on a lesser-included, and there would be a substantial lower punishment. And you're analogizing, though, to the other, the aggravated domestic? I'm not so much analogizing. I'm pointing that out to show that this isn't a case where the defendant said, or the state said A, the defendant said B, and the jury said, yes, state, you're right about this. This jury had some questions, and a lot of that I'm sure has to do with the fact that the victim had six sort of pre-recorded statements prior to trial, that the cross-examination of the victim I think took three days. It was fairly extensive, and there were sort of statements all over the place. So I don't point that out to say I'm not analogizing. I'm saying that this is a jury that wasn't wholeheartedly buying into the state's case, and it wasn't left with an alternative, an important third alternative on the other charge. Okay. Now, turning to another allegation of error here, you talk about ineffective assistance of trial counsel and of appellate counsel because of a synergy between them. How do you get a, quote, synergy, and what do you mean by that? If just because you have a trial counsel who recommended appellate counsel and the appellate counsel has trial counsel as of counsel and they both, let's say, attended an oral argument, I mean, how do you get that from the fact that they work together on the same case? It goes beyond that. Mr. Cox's finances, and I think he, this was in, I want to say his second supplemental, I don't recall. His finances are controlled entirely by trial counsel. When he, because he's in prison, trial counsel has power of attorney over his funds. Trial counsel hired appellate counsel. Trial counsel sort of worked with appellate counsel the whole way, and there were a lot of memos going back and forth, some of which I couldn't get my hands on to include. But it was more than just a hiring and an observing. It was sort of, it was a discussion between the two along the way. It was appellate counsel handpicked by trial counsel, and it was trial counsel relaying what was going on with the appeal back to Mr. Cox in prison. Right, but wouldn't you have wanted representation by two lawyers of this, of their reputation? I mean, their abilities? Yeah, yeah, I don't mean to necessarily attack their abilities. So what do you mean by synergy? I don't understand the use of the term. Mr. Cox's concern was this. He had written, and he put this in his filings, a lot of letters to appellate counsel saying, I want you to bring up the following issues, one of which was ineffective assistance of trial counsel. That issue never came to light. And Mr. Cox's belief is it's because that appellate counsel relied on trial counsel for so much support, and that trial counsel was ultimately the one determining what issues went in the appellate brief. Are you submitting that if Mr. Gumerson felt that raising an ineffective assistance claim by Mr. Was it Loizos? It was Ms. Perko, yes. Or Phyllis Perko. If Ms. Perko raised ineffective assistance, if she had told Mr. Gumerson, hey, if we raise ineffective, we may get him off, do you think that Gumerson wouldn't have said, go ahead and do it? Do you think that would have hurt his pride so much that he would have said, no, you can't do that because I don't want my client off? It's a difficult question for me to answer because I know Mr. Gumerson personally. Pride is a good word to describe, I think, the way Mr. Gumerson operates. If Mr. Gumerson thought that something was meritorious, would Mr. Gumerson say, don't put that in there because I'm worried that I'm going to get sued or whatever? I don't think Mr. Gumerson would. But on the other hand, Mr. Gumerson is looking at the issues probably from a different lens than somebody who's completely divorced from the trial court would. Ms. Perko is a pretty reputable appellate lawyer. If she saw ineffective assistance in the record, are you submitting that as an officer of the court, she would not have raised that? Or if Mr. Cox from jail said, look at that, she would not have looked at it because she was too close with Gumerson? Is that what you're submitting? No, I submit this. Mr. Cox raised these issues, and I believe we put them in there to the extent that there is a substantial showing of perhaps a problem. We'll leave it at that. Ultimately, is it going to be meritorious? We haven't been able to put on our evidence. We haven't been able to put Mr. Cox on to present all of the evidence. So it almost seems to me that, again, we're getting into sort of a third stage issue here where we haven't presented that. As far as a substantial showing, I think there's a concern. Do I think Ms. Perko would ever do anything that she would call into question her integrity? I don't believe that she would. I don't know her personally, but I don't believe that she would. I've seen enough of her work to know that she knows what she's doing. And so you're submitting that if we go to a third stage, Mr. Cox would be able to make a substantial showing, that there would be effective assistance based upon the fact that he asked that it be put in and not be put in? Yes, and it was more than just that. I mean, he had Mr. Cox, as you've seen, is a prolific writer. And there were a lot of memos, I know, that were going back and forth. And I know from my experience with Mr. Cox throughout this, I got a lot of letters from him. He's in prison. There's not a whole lot to do other than write letters. Correct. And I think that it's more than just sort of one minor issue. Do I think if we went to a hearing, we could make a substantial showing? I think being in the second stage on paper, we've made the substantial showing. Would we ultimately prevail? I mean, I think it depends on how the evidence goes out. And all we're really asking for at this point is the opportunity to do that. I can tell you that in talking to Mr. Cox, he knows that he's going to be probably the one required to convince the court of that while on the stand under oath and subject to cross-examination. Why don't you discuss the actual innocence issue? Yeah, and the actual innocence, and I should apologize at the outset. I brought up the fact that this was Judge Condon's last case. I didn't mean that in any way to impute the attention he paid to this case. I know Judge Condon well, and he was a great judge, and I'm sad to see him go. But the way this came up and the way it seems a little disjointed is because we thought it was important to have Judge Condon rule on these issues before he retired because he was familiar with the file. The actual innocence thing as it plays out in the brief, there's basically two points. There's the issue of the things that have come to light since the trial, and those are mostly financial. The financial motive, the 2011 family case where Mrs., I want to say Cox, I believe it's Mahoney now, was held in contempt of court for, in essence, not giving Mr. Cox the money he was owed. The fact that Ken Cox, who Mr. Cox in his filings kind of points the finger at as an alternative suspect who's never looked into, basically made millions. Actually, you know, you raised that the son Kenneth's alibi was invalid, that he allegedly had, he was playing tennis or something like that, and that was invalid. Refresh my recollection, I don't recall that being supported by affidavit in any of the petitions. I thought that Mr. Cox's, and this is where I was going to go with this, the petitions are filed all over the place, and the reason I gave Mr. Cox the option of letting me put them, reformat them into one petition with one affidavit, and he wanted to proceed to make sure Judge Condon ruled on this because we couldn't get that done prior to Judge Condon's ruling. But I thought that there were, in my recollection, three affidavits. There were two filed with Mr. Cox's pro se filings and then one filed at the end. And I thought, and I couldn't be wrong, and I apologize because I think there's 4,000 pages of record. I think that the second affidavit he has, it's covered in that, which is technically a response to the state's first motion to dismiss, which is after we proceeded to the second stage. Okay. And again, I do apologize for the way that this is all on the record. Okay. A lot of the arguments that you make with respect to the evidence are, and they were newly discovered. However, there's something that occurred well after the trial. How would that be newly discovered that would have affected the outcome of the trial? Speaking specifically to the financial stuff, in essence, Mr. Cox's position is that his family was waiting to make millions of dollars upon his conviction. Didn't he raise that at the trial, that there was a lot of financial motivation for their testimony? He did, and Ken Cox admitted on the stand that Ken Cox wanted to see Mr. Cox go away, BJ Cox. He admitted he wanted to see him convicted. And I look at it sort of in the lens of that there was bias raised at trial. To me, in Mr. Cox's filings with respect to the financials go beyond bias into motivation because you have people here who not only wanted him to go away but stood to gain millions and, in fact, did gain millions after the fact. And Judge Zopp's ruling with respect to the 2011 family law case where Judge Zopp says that she has knowingly defeated the administration of justice to the detriment of the defendant, I think, is more telling than anything because it shows that this perhaps is more than bias. It is more than bias. And none of this came out until after the fact, and that's why we've included him in there. But you'll have additional time to look at them. Thank you very much. Thank you. Ms. Burns. Are you comfortable standing for your argument? Yes, thank you, Your Honor. Okay. Thank you. Good morning, Your Honors. May it please the court. My name is Mary Beth Burns, and I represent the people of the state of Illinois. We come here this morning to respectfully ask this court to affirm the judgment that dismissed the defendant's post-conviction petition at second stage because, in fact, he failed to do so. He failed to make the necessary substantial showing of a constitutional violation. Because the defense started with the second issue, we will follow suit. And in the second issue, the defense argued that trial counsel was ineffective and impliedly appellate counsel was ineffective for not raising the issue of the failure to present a lesser offense of reckless conduct for the count of attempt murder that alleged that he tried to kill his wife with carbon monoxide poisoning. But isn't it the defendant's right, really, to make that decision with the advice of his attorney? It's absolutely the defendant's right to make the decision with the advice of his attorney. However, their right is somewhat meaningless when they can present no evidence that would have supported the instruction. They draw a parallel with the other attempt murder count, which was for the beating that the victim suffered. The state had also charged aggravated domestic battery. And the court found that as to the beating, the state had not proved the intent to kill but had proven the intent or the knowledge to do great bodily harm. There was no lesser offense charged for the carbon monoxide poisoning because there was no evidence that supported it. And the defense has presented no evidence that could have supported the instruction. But what about the argument that taking the state's evidence would have been enough for tendering of the instruction? No, absolutely not. Because the state's evidence is that over the course of apparently about six hours, the defendant attacked the victim, striking her as well as laying her on the floor of the garage between two running vehicles. So there could be a possible explanation that he had not initially struck her or even struck her the second or third time intending to kill her. Or the jury could have determined that he didn't intend to kill her. However, at the point when he lays her on the floor of the garage and turns on two vehicles, it somewhat becomes a little more apparent that she still hasn't died because he doesn't intend to kill her. It's incumbent, both under Strickland and under the Post-Conviction Hearing Act, for a defendant to present enough information to support the claim. Here, this claim could have only been supported if the defense could have brought evidence that would have supported giving the instruction. The fact that it's the defendant's right to seek a lesser instruction doesn't mean that a trial court is obligated to give it. Where there's, in fact, no evidence that would have supported giving the instruction here, even had it been presented to the trial court, I see no likelihood that it would have been given to the extent that I think the strategy argument is legitimate because the defense theory, which was very zealously advocated, was that her injuries were caused by a fall or some other form of accident. They presented two experts to say that her injuries were consistent with an accident. They attempted to have the... I apologize. I may be remembering this differently. My recollection is that pre-trial they attempted to have various other information presented, and I may be incorrect on this, and I apologize if I am. It's several months ago that I looked at this record. I think what I'm getting confused about, and I do apologize, is when they talk about the other matters of ineffective system of counsel, they talk about failure to seek to preserve the latter, and they don't, at no point within what were voluminous filings, at no point do they suggest when they believed or developed the theory that her injuries stem from an accident, they don't suggest at any point that they did, in fact, ask for the preservation of the latter or had they asked for the preservation of the latter at what point they asked for it. There was no reason for the state to keep the latter because the state's theory was always that she had been beaten, and so the state did not have possession of it. This is not a situation where the state did not preserve relevant evidence. The state never had the evidence. It was always in the victim's control. It had been brought from a different home that the couple owned that was their primary residence to be disposed of, and it was disposed of, and so to the extent that counsel is now being blamed for not seeking to have it kept or the state's being blamed in some brevity violation for not having kept it, there's no evidence that they ever requested it, there's no evidence of when the theory was developed, and so there's neither a Strickland error nor is there a due process error under the facts I've presented. To go back to the discussion about appellate counsel and her relationship, counsel's performance is always evaluated based on the entire analysis of representation. In this case, if one looks at the appellate brief that was filed by Ms. Perko, it was something like 70 pages, it had eight issues, it raised significant issues, and this court took those issues so seriously that it filed a voluminous Rule 23 order. So there is no doubt that the defendant received zealous appellate advocacy. Indeed, the defendant received zealous trial advocacy. The theory was developed that she suffered an accident and significant evidence was presented to support that. The defendant has simply not made his case, and again, under Strickland and under the Post-Conviction Hearing Act, it is the petitioner's obligation to make a case. He has failed to do so, which is why this case was dismissed at the second stage. I think at the end, counsel did discuss the evidence, the newly discovered evidence claim, and he talked about financial information that was developed after the trial. I think it would not be amazing that someone who had been victimized by a spouse during the course of divorce proceedings would perhaps not be adorable about it. I think that it's entirely possible that the victim was not a pleasant person during the divorce proceedings. She had believed and the state had proven that she had suffered horrific injuries at the hands of her husband. And I think, you know, if her lawyer in the divorce counseled her to hide money, that would obviously not be a good thing. But that has nothing to do with what actually occurred in that garage that morning. Was a lot of the financial information raised at the trial? I don't recall a lot of the financial information being raised. I know at the trial it was determined that the defendant and the victim were starting to wind down their involvement with the company that they had founded. And so they were giving more responsibility on day-to-day operations to the president and voting responsibility to the son. Prior to any of this occurring, they had apparently signed over enough stock that he actually had the voting interest in the corporation. A lot of this financial information that was brought up at the divorce proceedings, could that have been discovered at the trial during the discovery proceedings of the trial? You know, I'm not entirely sure to the extent that much of this is relevant, what would have been discovered. Again, to the extent that the defendant's son would benefit from him going to prison, that may or may not be true depending on how you look at this because, again, prior to this happening, he already had the governing share of the corporation. What happens subsequently where the son was apparently very open about wanting his father to be convicted and wanting him put away is presumptively what the jury presumptively believed was that the defendant had in fact harmed the son's mother and that he was taking the mother's side. Again, that would not be an amazing situation under the facts of the case. Counsel raises some arguments or some issues with respect to the wife giving money to or doing an advertisement or commercial for the then state's attorney some years after the trial. That's right. There was some sort of a conflict. It's some newly discovered evidence. What is your response to that? That it's nonsensical, that it happened many years after the trial, that it was a contribution. Many people make contributions. The victim believed that the state's attorney's office had assisted her in getting her assailant put away, and so, yes, I believe that there was a photograph in the record of her at a fundraiser for the state's attorney. Again, this is many years after the trial. There's no reason to believe that this had anything whatsoever to do with the prosecution of the defendant. I think the problem with the argument is that the defense argument doesn't meet the standard for newly discovered evidence in that it doesn't bring anything that would exonerate him of the offense. And the newly discovered evidence law rises and falls on exoneration. You have to be able to bring newly discovered evidence that's material and is so compelling that it would likely lead to a different result on retrial. Impeachment cannot cover this. It has to actually be exonerating evidence. If the defense entirely failed to provide evidence, it would meet that standard. Do you wish to address the theory of Kenneth being the alternative perpetrator? I think the theory, from the defendant's point of view, I suppose the theory is somewhat compelling. However, he fails to tie it together. In one of the filings, he said that Kenneth's alibi has failed. He doesn't say how it's failed. He doesn't say who told him it failed. He doesn't say what was supported being failed. And, again, one might say that this is Stage 3 material. Counsel said that it's in the affidavit. I'm sorry? Counsel indicated that the failure of the alibi was contained in an affidavit. Is that your recollection? It is not my recollection, but, again, I looked at the record several months ago, and there were hundreds and hundreds of pages of pro se filings. My recollection about the claim with the alibi is that it was not tied to anything. If I'm incorrect, I apologize. Okay. Would it have been incumbent upon the defense attorney to investigate alibis prior to going to trial? I have no reason to believe that counsel didn't investigate them. But, again, on this record, there's no way to determine at what point the theory was developed that this was not an alternative assailant but was an accident. And to the extent that the accident theory was what the defense went with and, again, went with very zealously, I have no reason to believe counsel didn't look at other people's alibis, but I also have no reason to believe that counsel would have felt that it was important to push that when he very much was pushing for the jury to believe this to have been an accident. And much of the cross-examination to show how confused the victim was, I think, was geared once again to this was not suffering an attack by an assailant. What you suffered was a terrible accident. And here we have blood over on this concrete, and we have blood here, and where the blood is is inconsistent with where you said the defendant put you and things like that. So I think that, again, the record does not say what he did or did not investigate as to alibis, nor does the post-conviction record say at what point Ken's alibi supposedly fell apart. But to the extent that the theory at that point was really devoted to the theory of accident rather than to an alternative, it's entirely possible that he looked at it and then refocused his efforts. Because, again, what they very much did want to get in a trial but were unable to was the theory that Ken was planting memories. The false memory. False memory. And, again, the false memory would have gone to creating an assailant where, in fact, there had been no assailant. There had been an accident. So, again, I don't even think necessarily that the creation of false memory was meant to create an alternative suspect but was meant to undermine the victim's credibility in that because of the horrific accident and because of contact with a number of people over her healing period, that what she said about the event was not necessarily trustworthy. And so I think that was what the focus of the trial counsel was at that point. If there are no other questions. Thank you very much. Good morning. Mr. Hunter. Justice Jorgensen, you had asked or commented about the affidavit and the alibi, and I think I misunderstood when you originally asked with respect to the affidavit. I think that those allegations are in two or three paragraphs in one of his filings, but there are more details than I think we've spoke of here. The details, as I recall them, were that Mr. Cox alleged that Kenneth said he was at tennis lessons, he was not at tennis lessons, and that Mr. Gummerson never looked into that. So I did not mean to imply there were more facts in the affidavit, so I apologize if you understood it that way. I'd hate to think that you looked for that and didn't find it. So my apologies for that. I think the big picture here in listening to the argument that I want to focus on is this. You know, we talk about what Mr. Gummerson's trial theory was and how it fits with our arguments. Originally, Mr. Gummerson issues a whole bunch of subpoenas for burglaries, unsolved burglaries in Bull Valley. That either doesn't go anywhere, I think he gets some stuff, but for whatever reason, that doesn't develop. Then there's the arguments about the false memories because Mrs. Mahoney now, formerly Mrs. Cox, originally says that she doesn't remember how she sustained these injuries. Then the memories start coming up. That gets barred and doesn't get in at trial. The theory we're left with is the fall, the accident, and I'm not meaning to say that was disingenuous, but if you've ever done a trial, you know that your theory has to fit the facts, and those are the facts that Mr. Gummerson was allowed to present. My concern with the lesser-included instruction is if it's the right of the defendant to at least seek or request that, not that I have to admit it, it's the right of the defendant, somewhere along the line, when counsel's developing these theories and shedding theories and getting to the facts he's left with, he needs to have that conversation with Mr. Cox. But if the theory of a lesser-included or a lesser-included doesn't fit with his theory, why would he have that conversation with Mr. Cox? Because Mr. Cox has the right to ask for that, and Mr. Cox is the one going to prison if he loses. And he asked for it. He did not ask for it. Mr. Gummerson, I believe, our filing, which came up in the first paper that I filed as well as the amended paper I filed, is that Mr. Gummerson never talked to Mr. Cox about it at all. He never spoke to Mr. Cox and said, here's an option you have. Well, maybe because he felt that that was not an option because that did not fit with his theory of the case. Correct. Plus, he was going to put all his eggs in one basket, a not-guilty basket. Is that improper? Yes, I believe that it is. And I believe, and here's why, because if that is not improper, then we cannot talk about the decision to see the lesser included as a right. It can be something that can be talked about. But it's not a right Mr. Cox has if it's trumped by the way Mr. Gummerson always wants to go. And I'm not saying that in every case we needed admonishment or something like that, but I'm saying here you have a case that the stakes are high, Mr. Gummerson never brings this up to Mr. Cox, and Mr. Gummerson alleges in an affidavit sworn under oath that he would have gone another direction. Certainly there are all these cases saying that in essence it is trial counsel's job to sort of put the best foot forward. But if this is a right, it's something that has to be considered to the defendant's own detriment or otherwise. Unfortunately, some of the defendants I've represented, they want to go one way and we go that way, and it's not the best way, but at least it's their decision. But they asked you to make that decision. Mr. Cox never asked Mr. Gummerson for a lesser-included. You said it is his right if he wants a lesser-included, he should have a lesser-included. He never suggested a lesser-included. Mr. Gummerson never procured or investigated or went forward with a lesser-included because it didn't fit the facts of his case. So how is it every defendant's right to have a lesser-included offense when it's not practical? I'm not suggesting that it's the defendant's right to have the lesser-included. It is the defendant's right to discuss it with the attorney and have the attorney at least consider that in formulating his case. That's my point. It's practical. It fits the facts of his case, correct? Although if the determination about what is practical is made at the end of the day after Mr. Gummerson has already made decisions, A, B, C, D, E, F, G, getting to there, it's never going to look practical. Well, but isn't the bottom line here? Mr. Cox's theory throughout was I didn't do any of this. She fell. It was somebody else. It wasn't me. So how do you just reconcile it wasn't me, but if it was me, it was reconciled? It's an alternative theory. I mean, you're correct. It's a very difficult argument to make to a jury, and I'm not going to suggest it's a great one. But when I read that the problem I have conceptually is this. If this is indeed a right that a defendant has, just in general, not talking about Mr. Cox, I can't see, based on the reasoning that a defense attorney can work around it, that it's ever something that can be appealed or reviewed by an appellate court. And if it's not, if it's not something a defense attorney has to talk about or not something subject to review, it's really not a right. That's, in essence, my position. But do you agree that every right does not warrant the maximum remedy? I would definitely agree with that. And that's why the only remedy I'm asking for here is an evidentiary hearing in the trial court. I'm not asking for a reversal. I'm asking to at least be heard and let the trial court make that ruling. Okay, thank you very much. Thank you very much. The court will take the matter under advisement and render a decision in due course. The court stands in very brief recess until the next motion.